GNOSSOS MUSIC; Magicland Music; E. S. Prager, Incorporated; WB Music Corporation; Jobete Music Company, Incorporated; Commodore Entertainment Publishing Corporation; Badco Music, Incorporated; Black Bull Music, Incorporated; Appellees,

v.

MITKEN, INCORPORATED, Appellant,

and

Jerry Mitchell, Defendant.

No. 80–1311.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 12, 1980.

Decided June 30, 1981.

Stephen D. Kaylor, Asheville, N. C. (J. Lawrence Smith, Asheville, N. C., on brief), for appellant.

Jay Topkis, New York City (Bernard Korman, Wm. M. Nicholson, Judith M. Saffer, New York City, on brief), for appellees.

Before WINTER, RUSSELL and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

This is an appeal by a defendant, Mitken, Inc., from a March 5, 1980, district court order granting plaintiffs' motion to strike defendants' request for a jury trial in two consolidated copyright infringement cases.

Mitken, Inc., is the owner and operator of a nightclub in Asheville, North Carolina, the Cosmic Ball Room, that regularly presented live music for dancing in 1979. Its co-defendant at trial was Jerry Mitchell, its principal stockholder, who does not appeal. The plaintiffs/appellees (hereinafter "copyright owners") are eight owners of copyrights in original musical compositions and are members of the American Society of Composers, Authors and Publishers ("ASCAP"). Their works are registered, printed, and published in accordance with the copyright laws, thus entitling them to the exclusive right to publicly perform, or permit performance of, their music. 17 U.S.C. § 106(4).

Six of the copyright owners brought suit in the district court against Mitken and Mitchell in April 1979, alleging five instances of copyright infringement by public performance for profit of protected works. Three copyright owners filed another suit against Mitken in October 1979, alleging two additional infringements. The suits sought permanent injunctions, damages, and costs.

The defendants denied any infringements and requested a jury trial in both cases. The copyright owners waived any recovery in excess of the $250.00 minimum statutory damages and costs, stipulating that they would not offer proof of actual damages. Plaintiffs then moved the district court to strike the defendants' demands for a jury trial.

The district court consolidated the cases for trial, granted the copyright owners' motion to strike the demand for a jury trial, and entered judgment for them on five of the seven counts of infringement. Defendants were permanently enjoined from infringing specifically named compositions and ordered to pay $250.00 statutory dam-ages for each of the five infringements and costs (including $1,250.00 attorney fees).

The sole issue on appeal concerns the denial of trial by jury to alleged copyright infringers when the copyright owners seek only an injunction and minimum statutory damages.

The 1976 Copyright Act provides, in part:

(a) In General.—Except as otherwise provided by this title, an infringer of copyright is liable for either—

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

. . . .

(c) Statutory Damages.—

(1) . . . the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, . . . in a sum of not less than $250 or more than $10,000 as the court considers just.

17 U.S.C. §§ 504(a), (c)(1). The owners of the infringed copyrights are thus entitled to an injunction, actual damages, and profits *or*, in the alternative, an injunction plus statutory damages—the latter requiring no proof beyond the infringement. A plaintiff in an infringement suit who seeks only the alternative statutory damages is, of course, relieved of the often difficult burden of proving actual damages or infringer's profits. *Douglas v. Cunningham*, 294 U.S. 207, 209, 55 S.Ct. 365, 366, 79 L.Ed. 862 (1935).

■ Appellant contends it is entitled to jury trial both by the terms of section 504(c) of the Act and by the seventh amendment to the United States Constitution. We observe initially that the question of the right to a jury in litigating a statutorily-created right should be decided as a matter of statutory construction rather than of

constitutional interpretation wherever possible.[1]

Appellees first argue that the language of section 504(c) is ambiguous but, properly read, indicates a congressional intent that the amount of statutory damages be determined by the court without a jury. We agree that the language is ambiguous, but cannot interpret it as the copyright owners contend. As the courts concluded in *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), and *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978), "court" could mean either "judge" singularly or "judge and jury" in tandem. The language of the fair housing statute interpreted in *Curtis* read "[t]he court may grant as relief, as it deems appropriate." 415 U.S. at 189, 94 S.Ct. at 1005 (quoting 42 U.S.C. § 3612). The language of the Truth in Lending statute interpreted in *Barber* states that damages can be awarded in "such amount as the court may allow" and "as determined by the court," and sets out factors that "the court shall consider." 577 F.2d at 219 n. 3 (quoting 15 U.S.C. § 1640(a) (1975)). In each case the courts held that Congress meant a determination by a jury. If anything, the language of section 504(c) enforces rather than detracts from an interpretation requiring a jury trial, but it is not sufficiently clear to mandate either a bench trial or a jury trial. *Barber, supra.* But see *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977); *Chappell & Co. v. Palermo Cafe Co.*, 249 F.2d 77 (1st Cir. 1957).

Since neither a reading of section 504(c) nor a review of its congressional history reveals whether it creates the right of trial by jury for statutory damages, we must decide whether the seventh amendment requires a jury trial in litigation involving minimum statutory damages.

The language of the seventh amendment is concise: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved ...." U.S.Const. amend. VII. In *Curtis* the Supreme Court quoted Justice Story in summarizing the accumulated understanding of "suits at common law" as that term was used by the drafters of the Bill of Rights in framing the seventh amendment.

> The phrase 'common law,' found in this clause, is used in contradistinction to equity, and admiralty, and maritime jurisprudence.... By *common law*, [the framers of the amendment] meant ... not merely suits, which the *common* law recognized among its old and settled proceedings, but suits in which *legal* rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.... In a just sense, the amendment, then, may well be construed to embrace all suits which are not of equity and admiralty jurisdiction, whatever may be the peculiar form which they may assume to settle legal rights.

415 U.S. at 193, 94 S.Ct. at 1007–008 (quoting *Parsons v. Bedford*, 28 U.S. (3 Pet.) 433, 446–47, 7 L.Ed. 732 (1830)).

In *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), the Supreme Court held that the seventh amendment afforded a right to jury trial of legal issues even when equitable issues are involved in the same case: "Only under the most imperative circumstances, ... can the right to a jury trial of legal issues be lost through prior determination of equitable claims." *Id.* at 510–11, 79 S.Ct. at 956–57. That principle was reaffirmed in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), which found that jury trials must be provided even where the trial judge characterizes the legal issues as "incidental" to equitable issues. Neither

---

1. *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978); *Curtis v. Loether*, 415 U.S. 189, 192 n. 6, 94 S.Ct. 1005, 1007 n. 6, 39 L.Ed.2d 260 (1974); *Barber v. Kimbrell's,* *Inc.*, 577 F.2d 216, 224 n. 23 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978).

language in the pleadings nor the nature of the defenses could render a matter "purely equitable" so as to preclude a jury trial where there were legal issues. *Id.* at 478–79, 82 S.Ct. at 900.

There had been some uncertainty as to whether a suit to enforce rights created by congressional action should be characterized under the legal/equitable analytical framework as a "suit at common law." The Supreme Court in *Curtis, supra,* dissipated that confusion. The Court there said:

> Whatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law [and]
>
> . . . .
>
> . . . when Congress provides for enforcement of statutory rights in an ordinary civil action in the district courts, where there is obviously no functional justification for denying the jury trial right, a jury trial must be available if the action involves rights and remedies of the sort typically enforced in an action at law.

415 U.S. at 194–95, 94 S.Ct. at 1008–09 (footnote omitted).

The decision as to a jury trial right in the case *sub judice* is thus reduced to determining whether the right to statutory damages provided by section 504(c) is a remedy that has been typically enforced in an action at law. We think both *Curtis* and *Barber* require an affirmative answer.

As we indicated in *Barber,* this pivotal analysis requires a two-part test. "*First,* are the rights and duties created by the statute analogous to rights and duties historically comprehended by the common law? *Second,* are the remedies sought legal rather than equitable in nature?" 577 F.2d at 225.

First, the underlying question is whether a legal or equitable base supports that part of the statutory scheme allowing a plaintiff to recover damages. The copyright statute, when first enacted, defined a new legal duty, but recovery for breach of that duty is analogous to recovery for a number of tort actions traditionally recognized at common law. *See Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.,* 453 F.2d 552, 554 (2d Cir. 1972); *Ted Browne Music Co. v. Fowler,* 290 F.2d 751, 754 (2d Cir. 1923). So viewed, copyright infringement is a tortious interference with a property right for which Congress created the remedy for damages. *See Screen Gems, supra; Ted Browne Music, supra.* The fact that it was created by statute makes it no less sounding in tort. *See Curtis, supra,* 415 U.S. at 195, 94 S.Ct. at 1009. We conclude that, as was the case regarding the statutes interpreted in *Curtis* and *Barber,* a civil action seeking damages for copyright infringement under 504(c) is basically an action for the enforcement of a legal right.

Second, section 504(c), the copyright infringement statute we now consider, provides a remedy of a type which traditionally would have been enforced at law. The copyright owners, in addition to the injunction, sought the minimum statutory damages of $250.00 for each infringement. As the trial court held in *Chappell & Co. v. Pumpernickle Pub, Inc.,* 79 F.R.D. 528 (D.Conn.1977), this is analogous to the ancient civil action for debt. The analysis does not stop there, however. Even had the owners requested statutory damages in the allowable range above $250 (i. e., not a specific amount), such would yet have been a remedy recoverable in an action at common law. The statute creates a concomitant right to injunctions but this says no more than that the total new package contains both equitable and legal remedies.

It is true that the fact-finder's discretion is limited by section 504(c) to fixing damages within a specified range. This, however, is not a recent innovation. Statutory rights created by state legislatures have circumscribed damage-fixing by juries in wrongful death actions, tortious interference with mineral rights, usury actions, and many others. Congress has given the fact-finder discretion in assessing damages in a number of statutes, including the Truth in Lending Act, *Barber, supra* ; the fair hous-

ing provisions of the Civil Rights Act, *Curtis, supra*; and the antitrust laws, *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 264, 66 S.Ct. 574, 579, 90 L.Ed. 652 (1946).

In our view, the application of the seventh amendment to the facts of this case mandates a trial by jury. This result is required by our holding in *Barber* and by the Supreme Court's holding in *Curtis.* The judgment of the district court denying the defendant's motion for a jury trial is therefore reversed and the case remanded for further proceedings consistent with the views expressed in this opinion.

REVERSED AND REMANDED WITH DIRECTIONS FOR JURY TRIAL.