887 F.Supp. 219 (1995)
CROSS KEYS PUBLISHING CO., INC., et al., Plaintiffs,
v.
LL BAR T LAND & CATTLE CO., INC., Lorenzo G. Mazzuca and Joseph P. Westhus, Defendants.
No. 4:94CV01851 GFG.
United States District Court, E.D. Missouri, Eastern Division.
May 25, 1995.
*220 *221 Douglas A. Copeland, Copeland and Gartner, St. Louis, MO for plaintiffs.
Joseph P. Westhus, Spalding and Cullen, Chesterfield, MO, for defendants.

MEMORANDUM AND ORDER
GUNN, District Judge.
Plaintiffs' motion for summary judgment in this copyright infringement action is pending before the Court. Document 10. For the reasons set forth below, the motion is granted.
The plaintiffs in this action, Cross Keys Publishing Co., Inc., Evanlee Music, Major Bob Music, Polygram International Publishing, Inc., St. Julien Music and Poorhouse Hollow Music, own the copyrights on the following musical compositions: "Cold Shoulder," "Papa Loved Mama," "If Tomorrow Never Comes," and "Just Call Me Lonesome." Document 1, Sch. A; Cosme Aff., Exhs. A-D. The defendants are: LL Bar T Land & Cattle Co., Inc. (the corporation), a Missouri corporation which owns and operates the Jersey Lil Saloon in St. Louis, Missouri; Lorenzo G. Mazzuca, president of the corporation; and Joseph P. Westhus, secretary of the corporation. Document 1 at 2.
Plaintiffs allege that until January 1, 1994, defendants held a license from the American Society of Composers, Authors and Publishers (ASCAP), the performing rights licensing organization of which all plaintiffs are members, which authorized the public performance of any or all of the copyrighted songs in the ASCAP repertory at the Jersey Lil Saloon. The license agreement terminated on January 1, 1994, due to defendants' failure to pay license fees. Id. at 4. Plaintiffs further allege that on July 23, 1994, and at other times prior and subsequent thereto, defendants infringed the copyright on each of the compositions listed above by giving public performances of the compositions on the premises of the Jersey Lil Saloon for the entertainment and amusement of patrons. Id. at 3. As relief, plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c)(1), an injunction permanently restraining defendants from publicly performing the compositions and from causing or permitting the compositions to be publicly performed in the saloon, or in any place owned or controlled by defendants, and attorneys' fees and costs pursuant to 17 U.S.C. § 505.
Plaintiffs served defendants with their motion for summary judgment and supporting affidavits on April 7, 1995. Document 10. Defendants did not respond to the motion within 20 days of the date of service, as required Local Rule 7(B)(2), nor did defendants seek leave to file a response out of time. Instead, on May 5, 1995, defendants filed a motion to dismiss, requesting that the Court dismiss Joseph P. Westhus as an individual defendant because he has never served as an official officer, director or shareholder of the corporation or participated in any decision-making processes with respect to the corporation. Document 11. Westhus submitted an affidavit reiterating these claims. Westhus Aff. ¶¶ 2-3. Lorenzo G. Mazzuca also submitted an affidavit in which he asserted that there may be an amount due but that the amount is significantly less than that alleged by plaintiffs. Mazzuca Aff. ¶ 3. Mazzuca further averred that he is the "sole officer, director and shareholder of the corporation," and that Westhus "at one time was a designated officer, however, he has never served in the official capacity as an officer or director of [the corporation]." Id. at ¶¶ 6-7.
In response, plaintiffs note that it is unclear whether defendants' affidavits are intended to serve as support for their motion or to serve as a response to plaintiffs' motion for summary judgment. Document 12 at 1. Plaintiffs point out that the motion to dismiss *222 is untimely under Local Rule 7(H), which requires such motions to be filed no later than 45 days before the trial date absent a showing of good cause for the untimely filing. Id. at 1-2. Plaintiffs further observe that in answer to the complaint, defendants admitted "each and every allegation as contained in paragraph 5 of Plaintiffs' Complaint." Document 8, ¶ 5. Paragraph five of the complaint alleges:
Defendants Lorenzo G. Mazzuca and Joseph P. Westhus are residents of this District and, at all times hereinafter mentioned were and still are President and Secretary respectively, of [the corporation] and share joint responsibility for the control, management, operation and maintenance of the affairs of said corporation. The acts hereinafter complained of were done with their active assistance, cooperation, acquiescence and procurement, and they derive financial benefit therefrom.
Document 1, ¶ 5. Plaintiffs maintain that this admission is binding and establishes Westhus's liability. Plaintiffs also submit the corporation's 1993 annual report to the State of Missouri, which lists Westhus as an officer and director. Document 12, Exh. 1.

DISCUSSION
Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Court views the evidence and the inferences which may be drawn therefrom in the light most favorable to the nonmoving party. Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir.1992). The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In response to a properly supported motion, the nonmoving party, by affidavit or other admissible evidence, must set forth specific facts which demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 257, 106 S.Ct. at 2514. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

1. Copyright Infringement
Plaintiffs must plead and prove the following elements to establish a claim of copyright infringement by unauthorized public performance: (1) authorship of the compositions; (2) ownership of the copyrights; (3) compliance with the statutory requirements to obtain the copyrights; and (4) unauthorized public performance. Unicity Music, Inc. v. Omni Communications, Inc., 844 F.Supp. 504, 507 (E.D.Ark.1994); Almo Music Corp. v. 77 East Adams, Inc., 647 F.Supp. 123, 124 (N.D.Ill.1986). "A prima facie case as to the first three elements may be made by submitting certified copies of copyright registration certificates and any subsequent assignments." Van Halen Music v. Palmer, 626 F.Supp. 1163, 1165 (W.D.Ark.1986). Plaintiffs have presented certified copies of the copyright certificates for each of the compositions at issue. Cosme Aff., Exhs. A-D. Defendants have not challenged the validity of these copyrights. Thus, under 17 U.S.C. § 410(c), plaintiffs have established the validity of their copyrights. See Autoskill, Inc. v. National Educ. Support Sys., 994 F.2d 1476, 1487 (10th Cir.1993). Likewise, plaintiffs have submitted unrebutted affidavits which establish unauthorized public performance of these compositions. See Michael J. O'Boyle Aff. ¶¶ 3-6; Sharon J. O'Boyle Aff. ¶¶ 3-6; Robert Pauley Aff. ¶¶ 7-11. In view of this evidence, plaintiffs are entitled to summary judgment on their claim of copyright infringement by unauthorized public performance.

2. Liability of Corporate & Individual Defendants
"Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable." Screen Gems  Columbia Music, Inc. v. Metlis & Lebow Corp., 453 F.2d 552, 554 (2d Cir.1972). There are two prerequisites for vicarious liability for copyright infringement: *223 (1) the right and ability to supervise the infringing activity; and (2) a direct financial interest in the exploitation of the copyrighted materials. RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir.1988).
Defendants admitted in their answer that the corporation owns and operates the Jersey Lil Saloon. Document 8, ¶ 4. Thus, the corporation is liable for the infringing performances. See Boz Scaggs Music v. KND Corp., 491 F.Supp. 908, 913 (D.Conn. 1980). Regarding the liability of Mazzuca and Westhus, they admitted in their answer that they "share joint responsibility for the control, management, operation and maintenance of the affairs of [the] corporation." Document 1, ¶ 5; Document 8, ¶ 5. They also admitted that the acts about which plaintiffs complained "were done with their active assistance, cooperation, acquiescence and procurement, and they derive[d] financial benefit therefrom." Id. This admission provides a sufficient basis for imposing individual liability on Mazzuca and Westhus. See RCA/Ariola, 845 F.2d at 782; Van Halen Music, 626 F.Supp. at 1166-67.
As for the affidavits of Westhus and Mazzuca, the Court first notes that they are untimely, either as a response to the motion for summary judgment or as evidence in support of the motion to dismiss, and need not be considered. In any event, the admissions contained in defendants' answer concerning Westhus's participation in the management and control of the corporation, his financial interest in the corporation and his participation in the infringing acts are binding, notwithstanding the affidavits. Admissions in pleadings are in the nature of judicial admissions, binding upon the parties unless withdrawn or amended. Missouri Housing Dev. Comm'n v. Brice, 919 F.2d 1306, 1314 (8th Cir.1990). "[E]ven if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." Id. at 1315. Accordingly, all three defendants are jointly and severally liable for the infringement.

3. Injunctive Relief
Plaintiffs request a permanent injunction prohibiting further infringing performances and prohibiting defendants from performing the compositions identified and any and all music in the ASCAP repertory. Pursuant to 17 U.S.C. § 502(a), the Court "may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." Once liability is established, courts will grant permanent injunctions if there is a substantial likelihood of future infringements. Marvin Music Co. v. BHC Ltd. Partnership, 830 F.Supp. 651, 655 (D.Mass.1993). Further, "to prevent future infringements of copyrights held by ASCAP members, courts have extended the injunction's scope beyond individual plaintiffs' copyrights to reach any musical composition licensed through ASCAP." Id.; Pedrosillo Music, Inc. v. Radio Musical, Inc., 815 F.Supp. 511, 516 (D.P.R. 1993).
Here, the threat of future infringements is substantial. Defendants have been operating the Jersey Lil Saloon without an ASCAP license since January 1, 1994. Pauley Aff. ¶ 9. Nevertheless, the saloon remains open for business and continues to promote the performance of musical compositions. Id. at ¶ 10; M. O'Boyle Aff. ¶¶ 3-6; S. O'Boyle Aff. ¶¶ 3-6. The evidence further indicates that defendants are not interested in renewing their ASCAP license. Accordingly, in view of these circumstances, the Court concludes that an injunction barring defendants from performing without authorization plaintiffs' works and any musical composition in ASCAP's repertory is warranted.

4. Damages
Under 17 U.S.C. § 504(c)(1), a copyright owner "may elect ... to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, ... in a sum of not less than $500 or more than $20,000 as the court considers just." District courts are "accorded wide and almost exclusive discretion in determining the size of the statutory damage *224 award." Video Views, Inc. v. Studio 21, Ltd., 925 F.2d 1010, 1017 (7th Cir.), cert. denied, 502 U.S. 861, 112 S.Ct. 181, 116 L.Ed.2d 143 (1991). Among the factors to be considered in awarding statutory damages are: (1) the expenses saved and profits reaped by defendants in connection with the infringement; (2) revenues lost by plaintiffs; and (3) whether the infringement was willful and knowing or accidental and innocent. Rare Blue Music, Inc. v. Guttadauro, 616 F.Supp. 1528, 1531 (D.Mass.1985). Courts have generally agreed that statutory damages should exceed unpaid licensing fees to drive home the point that "it costs less to obey the copyright laws than to violate them." Music City Music v. Alfa Foods, Ltd., 616 F.Supp. 1001, 1003 (E.D.Va.1985).
Here, plaintiffs have submitted evidence indicating that defendants have saved $2,700 in fees by failing to renew their ASCAP license when it expired. Pauley Aff. ¶ 13. The cost of the investigation to obtain the evidence necessary to prosecute this action amounted to $558.75. Id. The record is silent as to the specific amount of revenue lost by plaintiffs. However, the record clearly reveals that the infringements were willful and knowing. Defendants obtained an ASCAP license in June 1992; defendants failed to pay fees due under the licensing agreement despite repeated requests from local ASCAP representatives during 1993; defendants received notice that their license agreement terminated effective January 1, 1994, and that any performances of copyrighted musical compositions thereafter would constitute infringement; and defendants continued to operate the saloon in which copyrighted musical compositions were performed for the public. Id. at ¶¶ 7-11. In view of the foregoing, the Court agrees with plaintiffs' assertion that statutory damages of $2,000 per infringing performance for a total award of $8,000 is appropriate. See, e.g., International Korwin Corp. v. Kowalczyk, 855 F.2d 375, 383 (7th Cir.1988) (affirming award of $1,500 per infringement which amounted to three times license fees); Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc., 712 F.Supp. 1257, 1264 (S.D.Tex.1989) (awarding $2,000 per infringing performance for a total of $8,000).

5. Attorneys' Fees
Citing 17 U.S.C. § 505, plaintiffs request that the Court award $195.00 in costs and $3,464.50 in attorneys' fees, for a total award of $3,659.50. Whether to award attorneys' fees to a prevailing party under § 505 is a matter within the Court's discretion. Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 122 (8th Cir.1987). In view of the evidence presented and the evident willfulness of defendants' actions, the Court concludes an award of costs and fees is particularly appropriate in this case. See Milene Music, Inc. v. Gotauco, 551 F.Supp. 1288, 1297-98 (D.R.I.1982).
Counsel for plaintiffs has submitted an affidavit detailing the amount of time spent in preparing and prosecuting this case and the amounts charged therefor. D. Copeland Aff. ¶¶ 1-3. The Court finds the time spent and the amounts charged reasonable in view of the quality of the services rendered and the result obtained. The Court therefore awards plaintiffs $3,464.50 in attorneys' fees. As costs, plaintiffs request only the amount expended filing this action and serving the complaint on the three defendants  a total of $195.00. The Court grants this request.
Accordingly,
IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment is granted.
IT IS FURTHER ORDERED defendants' motion to dismiss is denied.
A separate judgment will be entered in accordance with this memorandum and order.